IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00677-CMA-NRN

STEVEN HARDY and
JODY WHITSON-HARDY,

Plaintiffs,

v.

MERVIN J. FLOOD and
SUSAN S. FLOOD,

Defendants.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (Dkt. #78)

**Entered by Magistrate Judge N. Reid Neureiter**

This case is before the Court pursuant to an Order (Dkt. #80) issued by Judge Christine M. Arguello referring Defendants Mervin J. Flood and Susan S. Flood's Motion to Dismiss Plaintiffs' Second Amended Complaint. (Dkt. #78.) The Court has carefully considered the motion, Plaintiffs Steven Hardy and Jody Whitson-Hardy's Response (Dkt. #87), and the Floods' Reply. (Dkt. #89.) The Court heard argument on the subject motion on October 3, 2018. (Dkt. #103.) The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court, now being fully informed, makes the following recommendation.

## BACKGROUND

**Factual History**

The following allegations are taken from the Second Amended Complaint (Dkt. #66) and are described in the light most favorable to the Hardys.

The Floods were the original owners of real property in Franktown, Colorado, that includes a house, a horse barn, and a road arch (the "Property"). (*Id.* ¶ 8.) In June 2013, the Hardys purchased the Property from the Floods pursuant to a written Contract to Buy and Sell Real Estate (the "Purchase Contract"). (*Id.* ¶ 5.) Prior to the sale, the Floods provided the Hardys with a "Seller's Property Disclosure (Residential)," (the "SPD"). (*Id.* ¶ 8; #66-3.) In the SPD, the Floods represented that there were no "additions or alterations" made to the Property, and no "moisture and/or water problems." (Dkt. #66 ¶ 10; #66-3 at 1.) During a property inspection on May 8, 2013, no latent or hidden defects were discovered. (Dkt. #66 ¶11.)

Unbeknownst to the Hardys, the basement of the home was an addition that had been completed no more than four years before the sale. (*Id.* ¶13.) Moreover, the Floods had not obtained building permits for the basement construction, the additional upstairs improvements, the barn, or the road arch. (*Id.*) The Floods knew that the work was done without a permit, but the Hardys did not learn this until 2015. (*Id.*) According to the Hardys' expert witness, attorney and licensed real estate broker Alan L. Stein, "improvements to real property which are built without required building permits and governmental inspections are 'latent or hidden defects,' which have been defined in Colorado as 'those manifesting themselves after purchase and which are not discoverable through reasonable inspection.'" (*Id.* ¶ 16; #66-4 at 4.)

2

After the sale, the Hardys experienced significant water leaks in the home and, while making repairs, discovered black mold, suggesting a history of leaks and moisture problems. (Dkt. #66 ¶ 20.) At least one of the leaks was caused by shower tiles that had been adhered directly onto plywood, which is not an acceptable construction practice. (*Id.*) Finally, the road arch collapsed after the Hardys purchased the Property. (*Id.* at 21.)

In sum, the Hardys identify the following conditions that they contend were latent defects that the Floods were obligated to disclose:

1. The Floods' construction of additions and alterations to the basement without a building permit, without the building department's review of the design, without inspections by the building department, and in violation of the building code;

2. The Floods' addition of the barn without a building permit, without the building department's review of the design, without inspections by the building department, and in violation of the building code;

3. The Floods' construction of the road arch without a building permit, without the building department's review of the design, without inspections by the building department, and in violation of the building code; and

4. Water leaks upstairs and in the basement.

(*Id.* ¶ 21.)

The Hardys assert claims for breach of contract, fraud, and negligent misrepresentation. (*Id.* ¶¶ 26-46.) They request an award of punitive and exemplary

3

damages, in addition to the actual damages incurred because of the Floods' conduct. (*Id.* at 11-12.)

**Procedural History**

The Hardys filed their initial Complaint in Douglas County District Court on December 28, 2016. (Dkt. #3.) The Floods timely filed their Notice of Removal on March 17, 2017. (Dkt. #1.) When the Floods' Motion for a More Definite Statement (Dkt. #7) was denied (Dkt. 23), they moved to dismiss Plaintiffs' Complaint on May 17, 2017. (Dkt. #26.) In response, pursuant to Fed. R. Civ. P. 15(a)(1)(B), the Hardys filed an Amended Complaint and Jury Demand on June 9, 2017. (Dkt. # 32.) On June 12, 2017, the Floods moved to dismiss the Amended Complaint. (Dkt. # 35.) Judge Arguello granted the Floods' motion because she found that the Amended Complaint did not satisfy the particularity requirements of Fed. R. Civ. P. 9(b), but gave the Hardys leave to file a Second Amended Complaint (*see* Dkt. #65), which they did on March 22, 2018. (Dkt. #66.) The Floods filed the subject motion to dismiss on April 12, 2018. (Dkt. #78.)

## LEGAL STANDARD

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotation omitted). A claim is plausible on its face "when the plaintiff pleads factual content that enables the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).